# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOLORES B. SPARKS,** | : | **No. 3:05cv2274** |
| **Plaintiff,** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **SUSQUEHANNA COUNTY,** | : | |
| **WILLIAM BRENNAN,** | : | |
| **SUSQUEHANNA COUNTY PRISON** | : | |
| **BOARD,** | : | |
| **HASSAN KHALIL, and** | : | |
| **JOANN WISER,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court are the parties' motions in limine (Docs. 89, 91, 93 95).

Having been fully briefed, the matters are ripe for disposition.

**Background**

This suit arises out of the death of Beth Ann Croasdale ("Decedent") at the

Susquehanna County Correctional Facility ("SCCF") on April 2, 2004.  On that day,

Croasdale suffered a severe asthma attack; she was transported from the prison to a

local hospital and was pronounced dead. The deceased was admitted to the SCCF

in January 2004 for operating a vehicle with a suspended or revoked license.

(Amended Complaint (hereinafter "Cmplt") (Doc. 33) at ¶ 11). On the day she died,

Croasdale remained incarcerated at the SCCF.  (Statement of Material Facts of

Defendants Susquehanna County; William Brennan; Susquehanna County Prison Board; Joann Wiser and Carole Smalacombe (Doc. 67) (hereinafter "County Defendants' Statement") at ¶ 2). Plaintiff alleges in part that the defendants failed to provide Croasdale with access to Albuterol and a nebulizer, the device she needed to deliver the medication she needed to control her severe asthma, and that her death was thus the result of defendants' deliberate indifference to Croasdale's serious medical need. (Id. at ¶ 4). She also alleges that Defendant Dr. Hassan Khalil, a physician employed by the prison, evidenced both deliberate indifference and medical malpractice in his treatment of her.

Plaintiff filed her initial complaint (Doc. 1) in this court on November 2, 2005. After the parties engaged in some initial discovery and the defendants filed answers or motions to dismiss the complaint, the court granted plaintiff's motion to file an amended complaint and add an additional party. (See Doc. 31). After plaintiff filed this amended complaint, Defendant Dr. Khalil filed a motion to dismiss that complaint (Doc. 36). The court denied this motion on March 21, 2007. (See Doc. 55). After the close of discovery, both Dr. Khalil and the county defendants filed motions for summary judgment (Docs. 64, 66). The court granted these motions in part and denied them in part on April 3, 2009 (Doc. 86). The court then scheduled a pre-trial conference, and the parties filed motions in limine and briefs related to them, bringing the case to its present posture.

**Jurisdiction**

As this complaint was filed pursuant to 42 U.S.C. § 1983, the court has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution.").

**Discussion**

The court will address each of the parties' motions in turn.

**a. The County Defendants**

Defendants Susquehanna County, William Brennan, Susquehanna County Prison Board, and Joann Wiser ("County Defendants") filed a motion in limine that contains several parts (Doc. 89). The court will address each of those elements in turn.

**i. Evidence that plaintiff was not given access to her medication**

Defendants argue that plaintiff should be precluded from introducing evidence that she was not given access to her medication. Though plaintiff contends that denial of asthma medications contributed to plaintiff's death, defendants insist that no evidence indicates that plaintiff was ever denied these medications. The

defendants cite to statements from several witnesses that indicate that plaintiff could obtain her medication and autopsy reports that indicate that plaintiff had high levels of the medications in her bloodstream at the time of her death.

The court has already addressed this question in relation to defendants' motion for summary judgment, concluding that the question of whether plaintiff had actual and sufficient access to her asthma medication is a question that should be left to the jury. (See Doc. 86). A question of fact exists as to whether defendants' system for providing inmates with medication was constitutionally deficient. Since a motion in limine is not a proper place to reargue a motion for summary judgment, the court will deny the motion.

### ii. Evidence that a document slipped out of the prison file during Warden Brennan's Deposition

There is evidence to indicate that plaintiff had filed a request with the prison for access to her medication, and that this request became available in plaintiff's case because it fell out of a folder during Warden Brennan's deposition. Defendants argue that the court should bar this evidence after it bars evidence on access to the asthma medications. Since evidence on access to medications should not be admitted, defendants argue, evidence about whether plaintiff made requests for such medication should be denied as irrelevant.

The only basis for defendants' motion here is that the evidence on access to asthma medication should be excluded, and once excluded evidence about Warden

Brennan's actions in this instance would be irrelevant.  Since the court has denied the motion to exclude evidence about access to asthma medication, the court will likewise deny this potion of the motion.  Evidence about whether the prison ignored plaintiff's requests for her medication is surely relevant to the case.

### iii.  Evidence that Joanne Wiser was at fault for failing to provide CPR to plaintiff

Defendants also argue that no expert opinion should be provided which criticizes Defendant Joanne Wiser for her failure to provide plaintiff cardio-pulmonary respiration (CPR) in the prison.  Defendants contend that CPR is a treatment for heart failure, not asthma, and that autopsy reports indicate that plaintiff died from her asthmatic condition, not a heart problem.  Wiser's failure to provide CPR, therefore, cannot be a cause of death.   In any case, defendants argue that Dr. Greifinger should not be allowed to offer an opinion on the cause of plaintiff's death, as he is not qualified to do so.

The court has already addressed this issue in relation to defendants' motion for summary judgment.  Indeed, defendants made a similar argument in that context, and the court found that the question here was whether Defendant Wiser failed to provide medical treatment for a legitimate reason.  The court found that evidence existed by which a jury could conclude that Wiser had deliberately refused to provide plaintiff with medical treatment, despite her knowledge that such treatment was necessary.  While a jury could conclude that Wiser actually allowed plaintiff to

receive all of the treatment that was necessary, the court has already determined that this issue is one for the jury.  As a motion in limine is not a proper place to reargue a motion for summary judgment, the court will deny the motion on these grounds.  In terms of whether Dr. Greifinger can opine on the cause of Croasdale's death, the plaintiff has represented that Dr. Greifinger is not offered as an expert on these matters and will not testify on whether Wiser's failure to provide CPR caused her death.  That portion of the motion is therefore denied as moot.

### iv.  Motion to bar recovery for plaintiff's loss of earning capacity

Defendants contend that plaintiff should not be allowed to claim damages for lost earning capacity.  Plaintiff was receiving social security disability compensation at the time of her death, and thus lacked an earning capacity and is precluded from such claims.  Moreover, plaintiff has failed to identify an economist or other expert witness who has an opinion on whether plaintiff had any future earning capacity.

Defendants argue that under Pennsylvania's Survival Act, 42 Pa. C.S. § 8302, plaintiff cannot recover damages for lost social security disability benefits.  Plaintiff's amended complaint does not raise a cause of action against the county defendants pursuant to Pennsylvania law, however.[1]  "It is well-settled that compensatory

---

[1] In any case, the case cited by the defendants for the proposition that future earnings are not available for those receiving social security disability benefits, does not categorically hold that such recovery is unavailable under the act.  Indeed, in DeJesus v. United States VA, No. 02-0253, 2005 WL 2175174 (E.D. Pa. September 6, 2005), the court found that the decedent was not estopped from recovering for future earnings though he was receiving social security disability benefits at the time of his death.  Id. at *23.  The court found that plaintiff's responsibility was to not "'simply ignore' previous statements

damages under § 1983 are governed by general tort-law compensation theory."

Allah v. Hafeez, 226 F.3d 247, 250 (3d Cir. 2000).  Thus, "'damages are available

under [§ 1983] for actions 'found to have been violative of . . . constitutional rights

and to have caused compensable injury.'" Id. (quoting Cary v. Piphus, 435 U.S. 247,

255 (1978)).  Still, "substantial damages may only be awarded to compensate for

actual injury suffered as a result of the violation of a constitutional right."  Id.

Damages cannot be awarded on "[t]he abstract value of a constitutional right."  Id.

(quoting Memphis Community Sch. Dist. V. Stachura, 477 U.S. 299, 308 (1974)).

Here, the defendants object to plaintiff seeking damages for lost future income

when she had already represented to the Social Security Administration that her

severe asthma rendered her unable to work.  In essence, the defendants argue that

plaintiff should be judicially estopped from claiming damages for future wages when

she has already admitted that she cannot work.  Courts that have addressed this

problem in the context of motions for summary judgment in employment-related

matters have concluded that "'pursuit, and receipt, of SSDI benefits does not

automatically estop the recipient from pursing an ADA claim.  Nor does the law erect

a strong presumption against the recipient's success under the ADA.'" Detz v.

Greiner Indus., 346 F.3d 109, 116 (3d Cir. 2003) (quoting Cleveland v. Policy Mgmt.

Sys. Corp., 526 U.S. 795, 797-798 (1999)).  A plaintiff cannot, however, "'simply

_____

made to the Social Security Adminstration," but instead to "explain why that SSDI
contention is consistent with any subsequent assertion made for other purposes."  Id.

ignore' her previous statements to the SSA," but "'must explain why that SSDI contention is consistent with' her subsequent assertion in connection with her ADA claim." Id. (quoting Cleveland, 526 U.S. at 798); see also Turner v. Hershey Cholcolate USA, 440 F.3d 604, 608 (3d Cir. 2006) (finding that because plaintiff's "statements" in her application for social security disability benefits "did not state categorically that [she] could not work at all or take into account [her] entitlement to reasonable accommodation, we see no inconsistency between these statements and the current claim."). Here, then, plaintiff may claim that she is entitled to decedent's future earnings, but must show that decedent could have earned income beyond the social security benefits she received in order to obtain damages for lost earning capacity. The court will therefore deny the motion in limine without prejudice to the defendants again raising the issue at an appropriate time after the evidence has been presented.

### v. Damages for deceased plaintiff's children

Defendants argue that the deceased plaintiff's children should not be entitled to recovery for any pecuniary losses suffered because of plaintiff's death. Since plaintiff was unable to earn any income, there is no pecuniary loss available to her daughters. Moreover, defendants insist, plaintiff had lost her parental rights at the time of her death.

For the same reasons as stated above in relation to future earnings, the court rejects defendants' motion as it relates to future earning capacity. If plaintiff can

8

prove such future earnings were possible, the plaintiff's children could recover them. In terms of whether plaintiff possessed parental rights in relation to her daughters at the time of her death, defendants do not point to any facts in the record that indicate that a court had issued an order terminating her rights. Plaintiff's response to the motion denies that she had lost such rights. The question of whether plaintiff had any pecuniary relationship to her daughters is therefore one for the jury. The court will therefore deny the motion without prejudice to the defendants raising it at an appropriate time after the evidence has been presented.

### b. Dr. Khalil's motions

Defendant Dr. Hassan Khalil also filed motions in limine (Docs. 93, 95). The court will address each in turn.

### i. Preclusion of the testimony of plaintiff's expert Dr. Robert B. Greifinger

Defendant Khalil seeks to exclude the expert testimony of Dr. Robert B. Greifinger (Doc. 93). Defendant argues that Dr. Greifinger has offered an opinion that Dr. Khalil violated the standard of care in his treatment of Beth Ann Croasdale's asthma. This opinion, Khalil points out, duplicates an opinion offered by another of plaintiff's experts, Dr. Steven F. Reichart. Dr. Reichert concluded that defendant's treatment of plaintiff's asthmatic condition violated the standard of care, and an opinion by Dr. Greifinger on the same matter would be duplicative. Defendant also seeks the exclusion of testifmony by Dr. Reichert about the inadequacy of the prison

policy manual.  He argues that no evidence exists to indicate the Dr. Khalil ever saw this material, or that he had a hand in formulating the policies the manual represents. Moreover, defendant insists, Dr. Greifinger intends to testify to a legal conclusion–that defendant's conduct was deliberately indifferent to a serious medical need.  Such testimony is inappropriate, defendant claims, and should be excluded. Finally, defendant argues that Dr. Greifinger has not taught medical students or practiced medicine within the past two years, and therefore should be precluded from offering testimony on the standard of care.

Federal Rule of Evidence 702 provides that "a witness qualified as an expert by knowledge, skill, experience, training or education" may provide opinion testimony "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702.  Courts have described the function of the district court in determining whether to admit expert testimony as a "gatekeeping" one.  The trial judge has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 598 (1993).  Thus, "[t]he objective of that requirement is to ensure the reliability and relevancy of expert testimony.  It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an

10

expert in a particular field." <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 152 (1999).

Plaintiff here offers Dr. Greifinger as an expert on prison medical policies; he is slated to testify about what plaintiff considers substandard policies and practices in the prison, policies which she contends represent a deliberate indifference to a serious medical need. Dr. Greifinger is a medical doctor. (Curriculum Vitae of Dr. Robert B. Greifinger, Exh. 1 to Plaintiff's Brief in Opposition to Defendant's Motion in Limine (Doc. 99-2)). His resume reveals that he has been a consultant to several prisons on health care management. (<u>Id.</u>). Greifinger served as Deputy Commissioner and Chief Medical Officer of the New York State Department of Corrections from 1989-1995; there he was accountable for directing inmate health services. (<u>Id.</u>). Before that, Greifinger managed medical care at Rikers Island, New York. (<u>Id.</u>). Greifinger has also overseen other large medical centers and operations. (<u>Id.</u>). He has been appointed by several courts to monitor medical care in prisons. (<u>Id.</u>). Since 2005 he has served as an adjunct professor of Heath and Criminal Justice at the John Jay College of Criminal Justice. (<u>Id.</u>). In addition, Greifinger has served as an editorial board member for the Journal of Correctional Health Care, on a number of boards to prevent the spread of disease in jails, and as a member of the Society of Correctional Physicians. (<u>Id.</u>). Dr. Greifinger has also published extensively in professional journals and other publications on health care in prison. (<u>Id.</u>).

11

Dr. Greifinger's report relates that he reviewed numerous records in the case, including deposition transcripts, the amended complaint and answers to it, records of the treatment of the plaintiff, prison policy manuals, investigative records by the Pennsylvania State Police, the prison's policy and procedures manual, and various other materials related to the operation of the health-care system in the prison. (See Expert Report Robert B. Greifinger (Doc. 99-2)). Dr. Greifinger's report concludes that the Beth Ann Croasdale did not receive proper care, and that the prison did not follow its own policies regarding the treatment of prisoners with severe medical conditions. (Id.). The report also criticizes a lack of training of prison guards, a lack of a policy for managing medications, and a lack of attention to his responsibilities on the part of the prison doctor. (Id.).

Dr. Greifinger is clearly qualified to testify as an expert on the adequacy of the prison medical system erected by the defendants. He has years of experience and training on the issue, and has published extensively on prison health care. Dr. Greifinger's report analyzed the relevant data, and the report addresses the relevant question of whether the prison medical policies were so deficient as to represent a deliberate indifference to serious medical needs. Defendant Khalil's challenges to Dr. Greifinger's report does not address his qualifications to testify, but instead to the adequacy of the facts underlying and the quality of the reasoning that led to his conclusions. Defendant can challenge those matters through vigorous cross

examination.[2]

Defendant does contend that Dr. Greifinger is unqualified to testify in one area: defendant argues that Greifinger lacks the requisite expertise to testify on the standard of care for treatment of patients like Beth Ann Croasdale when they are having asthma attacks. Plaintiff responds by pointing out that Dr. Greifinger is offered as an expert on prison medical policies, and not as an expert on internal medicine. Plaintiff represents that Dr. Greifinger will not testify on the standard of care for treatment of the decedent, but instead on whether the medical care provided by the facility was deficient as a matter of constitutional law. The parties appear to agree, therefore, that Dr. Greifinger is not competent to testify on the particular facts of Dr. Khalil's treatment of the decedent. The portion of the motion that seeks to exclude testimony on the standard of care from Dr. Greifinger will therefore be denied as moot. The motion will be denied in all other respects.

### ii.  Preclusion of recovery of lost social security benefits

Defendant Khalil argues that plaintiff should not be able to recover any lost

---

[2]Defendant Khalil also complains that a portion of the report offers an opinion to the ultimate legal question in this case: whether defendant was deliberately indifferent to a serious medical need. Plaintiff represents to the court that Dr. Greifinger will not offer legal conclusions, and argues that the expert report does not attempt to define "deliberate indifference" for the jury. The court would not find this phrase as a reason to exclude testimony from Dr. Greifinger in any case, since "testimony 'in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.'" United States v. Rutland, 372 F.3d 543, 546 (3d Cir. 2004). Of course, to avoid conclusion, Dr. Greifinger would do better to relate and explain the facts which plaintiff contends represents deliberate indifference and allow the court to instruct the jurors on the meaning of the term.

income from the decedent's social security benefits. Under Pennsylvania law, he argues, a plaintiff in a survival action is entitled to damages only for income that could have been obtained through physical or mental labor. Since social security disability income is a form of "charity," defendant argues that under Pennsylvania law such damages are unavailable to the plaintiff. Plaintiff insists that the appropriate standard on this question is the federal standard, as she brings a claim pursuant to federal law. As such, she could recover such damages.

Defendant does not address whether plaintiff could recover lost social security disability payments if she prevails on her federal claims.[3] Instead, he cites state law to argue that in a survival action under Pennsylvania law "[t]he measure of a decedent's loss is what he 'would have probably earned by his intellectual or bodily labor and his business or profession during the residue of his life.'" Smail v. Flock, 180 A.2d 59, 61 (Pa. 1962) (citation omitted). Defendant argues that social security disability income is not the product of one's bodily or intellectual labor and is not recoverable in a survival action, as that income is merely "charity." As support for this proposition, defendant cites to Murdoch v. Commonwealth, 531 A.2d 1164 (Pa. Commw. Ct. 1987). In that survival and wrongful death action, the plaintiff sought to recover income from a trust that the decedent was to inherit upon the death of her mother-in-law. Id. at 1165. The decedent's mother-in-law, however, was still alive,

---

[3]The court therefore concludes that defendant does not dispute that plaintiff could recover for lost social security benefits if she prevails on her federal claim against him.

and nothing in the terms of the trust entitled the decedent's heirs to inherent her interest if she pre-deceased the mother-in-law.  Id.  The court found that plaintiff could not recover this sum in a survival action, because "[i]ncome received from a testamentary trust is not the product of the intellectual or bodily labor of [decedent]." Id. at 1166.  The court rejected plaintiff's argument that "the loss of decedent's interest in these testamentary trust is no different than the loss of Social Security, Veterans, and other similar benefits, terminable at death, for which we have allowed the recovery of damages."  Id.  Such payments, the court found, "are a product of the intellectual and physical labor of the claimant."  Id.

The question here, then, is whether income received from Social Security Disability Insurance, like income from Social Security, can be considered the product of the intellectual and physical labor of the claimant.  Defendant cites to no cases that stand for the proposition that it should not.  Murdoch does not address disability insurance, but merely notes that future Social Security benefits can be recovered in a survival action.  Defendant appears to argue that a distinction should be made between disability payments and social security benefits paid to retirees, insisting that disability payments are "charity" from the state.  That argument ignores, however, the fact that Social Security Disability Insurance is funded through the Federal Disability Insurance Trust Fund.  See 42 U.S.C. § 401(b).  That fund, like the Social Security Trust fund, is funded in large measure by wage taxes.  See 42 U.S.C. § 401(b)(1-2).  Moreover, an individual is eligible to receive social security

disability payments only if that individual would have been eligible for Social Security insurance payments at age 62.  See 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1)(A). Disability insurance, therefore, is a part of the larger social security system, an insurance program funded by taxes on the labor of individual American workers. Thus, payments under that program are the product of the labors of the recipient. The court will therefore deny the motion on these grounds.

### C.  Plaintiff's Motion

Plaintiff seeks to exclude the testimony of Defendant Khalil's expert witness, Dr. Edward Zurad (Doc. 91).  Plaintiff contends that Dr. Zurad does not possess the proper certification to testify in Pennsylvania on a matter of medical malpractice.   Dr. Khalil is certified in internal medicine, but Dr. Zurad lacks certification in that specialty.  Dr. Zurad has certification in another field, but plaintiff contends that his certification has lapsed.

The parties' dispute here is over whether Dr. Zurad is qualified to testify as an expert under Pennsylvania law.  The plaintiff's argument against Dr. Zurad's testimony is based on his alleged failure to meet the requirements of the Pennsylvania Medical Care Availability and Reduction of Error Act ("MCARE"), 40 P.S. § 1303.512, and not on any alleged failure to meet the federal requirement that "a witness qualified as an expert by knowledge, skill, experience, training or education" may provide opinion testimony "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and

methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. The court agrees that Dr. Zurad is qualified to testify as an expert under the federal rules. Defendant offers Dr. Zurad as an expert on the treatment of the decedent's asthma. Dr. Zurad's curriculum vitae, board certifications and an affidavit presented with defendant's brief in opposition indicate that Zurad is presently certified in family practice, and that he has years of experience in treating asthma patients. (See Exhs. to Brief in Opposition to Plaintiff's Motion in Limine (Doc. 101)).[4] He is qualified to explain the standard of care for asthma treatment and to offer an opinion on whether Dr. Khalil's treatment met that standard. Vigorous cross-examination will allow the plaintiff to test the limits of this knowledge.

The parties apparently agree, however, that the court should apply Pennsylvania law in determining whether Dr. Zurad is qualified to serve as an expert in a medical malpractice matter. As a general matter, federal courts apply federal rules of evidence, even in proceedings where they apply state substantive law. See, e.g., Park v. City of Chicago, 297 F.3d 606, 612 (7th Cir. 2002) (holding that "[t]he Federal Rules of Evidence, not provisions of state law, govern the admissibility of evidence in federal court."). At least one court in the Third Circuit, however, has concluded that Pennsylvania law should apply to determining whether an expert

---

[4]The court finds defendant's evidence sufficient to demonstrate that Dr. Zurad is currently board-certified to practice family medicine.

witness in a medical malpractice case brought pursuant to Pennsylvania law is competent to testify. <u>See</u> <u>Keller v. Feasterville Family Health Care Ctr.</u>, 557 F. Supp. 2d 671, 684 n.3 (E.D. Pa. 2008) (finding that "Section 512 of MCARE is a rule of witness competency, not of expert qualification . . . and § 512 of MCARE applies under [Federal Rule of Evidence] 601, and [the expert doctor] must meet its requirements to be competent to testify."). In the interest of completeness, the court will address the admissibility of the defendant's expert testimony under Pennsylvania law.

The dispute between the parties centers on the Pennsylvania Medical Care Availability and Reduction of Error Act ("MCARE"), 40 P.S. §§ 1303.101, *et seq.* Section 512 of that act provides that "[n]o person shall be competent to offer an expert medical opinion in a medical professional liability action against a physician unless that person possesses sufficient education, training, knowledge and experience to provide credible, competent testimony and fulfills the additional qualifications set forth in this section as applicable." 40 P.S. § 1303.512(a). The law requires that the expert be licensed as a physician by at least one state and have engaged in the practice of medicine within the previous five years. 40 P.S. § 1303.512(b)(1-2). For a physician testifying as to the standard of care, the witness must "(1) Be substantially familiar with the applicable standard of care for the specific care at issue as of the time of the alleged breach of the standard of care; (2) Practice in the same subspecialty as the defendant physician or a subspecialty which has a

18

substantially similar standard of care the specific care at issue, except as provided in subsection (d) or (e); (3) In the event the defendant physician is certified by an approved board, be board certified by the same or a similar board, except as provided in subsection (e)." 40 P.S. § 1303.512(c)(1-3). Finally, courts can waive the requirements of Section 1303.512(c)(2-3) "if the court determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in or full-time teaching of medicine in the applicable subspecialty or a related field of medicine within the previous five-year time period." 40 P.S. § 1303.512.

Plaintiff's complaint here is that Dr. Zurad does not possess a current and valid license. Plaintiff notes that Dr. Khalil is certified as an internist by the American Board of Internal Medicine, yet Dr. Zurad is not. Instead, Dr. Zurad is certified by the American Board of Family Medicine. He therefore does not practice in the same subspecialty as Dr. Khalil, and lacks the specific knowledge of Dr. Khalil's field required to allow testimony under MCARE. Plaintiff responds that Dr. Zurad's practice and experience make him qualified to testify on the standard of care for asthma. Since the claim here is related to a failure to provide treatment, Dr. Zurad is easily qualified to opine on whether care should be provided.

The court will deny the plaintiff's motion. Dr. Zurad has presented evidence that indicates he has a current medical license, that he has training in the treatment of asthma, and that asthma is a large part of the practice of any licensed family

physician.  He therefore can testify as to the standard of care in treating a patient who complains of chronic asthma.  An important question in this case is whether Defendant Khalil violated the standard of care by failing to provide treatment to a patient with obvious and continuing need of care.  Pennsylvania courts have found that "[t]he MCARE Act plainly prefers, and in some cases may require, that expert testimony in professional medical malpractice cases come from witnesses with expertise in the defendant's particular subspecialty."  Herbert v. Parkview Hosp., 854 A. 2d 1285, 1294 (Pa. Super. Ct. 2004).  At the same time, the act does not mandate "that expert testimony in *all* cases must be so restricted."  Id. (emphasis in original).  A court may "admit testimony from a doctor with expertise in another specialty that 'has a similar standard of care *for the specific care at issue*.'"  Id. (quoting 40 P.S. § 1303.512(c)(2)) (emphasis in original).

In this case, defendant seeks to have Dr. Zurad testify on the standard of care for treating a patient with chronic asthma.  His experience as a family physician certainly provides him with expertise on continuing care for the treatment of such chronic patients.  This is not a case where a family physician is asked to provide testimony on the care provided during a heart transplant, or other procedure where the physician may have knowledge, but no experience.  Defendant has demonstrated to the court's satisfaction that the expertise possessed by Dr. Zurad as a family physician on how to treat chronic asthma is similar to that possessed by an internist addressing the same question.  The court will deny the motion.  As with

20

any other witness, of course, the plaintiff may explore the limits of Dr. Zurad's knowledge through cross examination.

**Conclusion**

For the reasons stated above, the parties' motions in limine will be denied.  An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOLORES B. SPARKS,** | : | **No. 3:05cv2274** |
| **Plaintiff,** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **SUSQUEHANNA COUNTY,** | : | |
| **WILLIAM BRENNAN,** | : | |
| **SUSQUEHANNA COUNTY PRISON** | : | |
| **BOARD,** | : | |
| **JOHN DOES 1-10,** | : | |
| **HASSAN KHALIL, and** | : | |
| **JOANN WISER,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, to wit, this 5th day of June 2009,

1) Defendant Hassan Khalil's motions in limine (Docs. 93, 95) are hereby **DENIED**;

2) The motion in limine of Defendants Susquehanna County, William Brennan, Susquehanna County Prison Board, and Joann Wiser (Doc. 89) is hereby **DENIED**; and

3) Plaintiff's motion in limine (Doc. 91) is hereby **DENIED**.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**